UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:23-cv-1478-SDM-AEP
         8:22-cr-209-SDM-AEP

JOSE PALANCO PABON
_____/

## ORDER

Pabon moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the validity of his conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, for which he is imprisoned for 121 months. Both the conviction and sentence accord with the plea agreement. Pabon filed no appeal. The motion to vacate, timely under Section 2255(f)(1), asserts twelve grounds for relief.

Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (affirming that the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

entitled to relief "); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) [Rules Governing § 2255 Proceedings], allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'"). *See United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (citing *Wright* and *Hart*).

## I.  FACTS[2]

On or about May 28, 2022, a marine patrol aircraft located a northbound 25-ft. go-fast vessel (GFV) on a northerly course with two outboard engines, three persons aboard, bow partially covered, and 122 nautical miles south of Ponce, Puerto Rico. The United States Coast Guard Cutter (USCGC) Horsley intercepted the GFV approximately seventy-five nautical miles south of Guayama, Puerto Rico, in international water.

A Coast Guard boarding team from the USCGC Horsley intercepted the GFV, took control of the compliant vessel, and began a right of visit ("ROV") boarding. During ROV questioning, members of the boarding team identified the master of the vessel, who refused to verbally claim nationality for the vessel. Two crewmembers, including Pabon, claimed Dominican Republic nationality and one crewmember claimed Venezuelan nationality.

---

[2] This summary of the facts derives from Pabon's plea agreement. (Doc. 38 in 22-cr-209)

Owing to officer safety concerns and limited deck space on the GFV, the three crewmembers were removed from the GFV. The vessel was treated as one without nationality. The boarding team conducted two narcotics identification tests on packages, which tested positive for cocaine. USCGC Horsley reported a total of seventeen bales with an at-sea weight of approximately 600 kilograms of cocaine. At first light, USCGC Horsley took daylight images of the vessel then destroyed the vessel as a danger to navigation due to no suitable towing points, an inoperable bilge pump, vessel instability, and great distance from land.

Pabon willingly agreed to transport hundreds of kilograms of cocaine aboard the vessel with his co-defendant crewmembers and others. The purpose of the agreement was to smuggle this cocaine through international water and distribute the cocaine to other persons. Pabon knew that the packages aboard the vessel contained five or more kilograms of cocaine and knew that the planned voyage was a drug smuggling venture.

## II.  GUILTY PLEA

Pabon pleaded guilty and admitted to the above factual basis. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea[3] waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

---

[3] A conviction based on a plea of *nolo contendere* is reviewed the same as a conviction based on a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982).

This waiver of rights precludes most challenges to the conviction. "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.") and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). A guilty plea waives a claim based on a pre-plea event, including ineffective assistance of counsel. *Wilson*, 962 F.2d at 997. Consequently, the entry of a guilty plea waives a claim that occurred before entry of the plea, including both a substantive claim and a purported failing of counsel but neither a jurisdictional challenge nor a voluntariness challenge to the plea.

Pabon asserts eight grounds based on pre-plea events, mostly issues involving the grand jury: (1) that the United States issued grand jury subpoenas without requisite authority and authorization and failed to properly serve the subpoenas as required under Rule 17(d), Federal Rules of Criminal Procedure (Grounds Two and Nine); (2) that the district court lacked subject matter jurisdiction because of the United States' failure to properly serve the subpoenas under Rule 17(d) (Grounds Three and Nine); (3) that he had no opportunity to challenge the grand jury array or grand jury members (Grounds Four and Five); (4) that the grand jury did not return an indictment in open

court and that the foreman did not file a letter of concurrence (Grounds Six and Seven); and (5) that he received no "preliminary examination" (Ground Eight).  The claims are conclusory, for example, Pabon fails to identify why the United States lacked authority to issue a subpoena, how the subpoena (if any subpoena ever issued) was improperly served, and why improper service of a subpoena divests the district court of subject matter jurisdiction.  Pabon could have argued these claims in a pre-trial motion, especially the opportunity to challenge either the grand jury array or the grand jury members in a motion under Rule 6(b).  Each is based on alleged government conduct that occurred before the plea and, as a consequence, is foreclosed by the plea, as *United States v. Castillo*, 899 F.3d 1208, 1214 (11th Cir. 2018) (ellipses original), explains:

> Castillo's guilty plea forecloses his argument "that the 19-day delay before [he] appeared before a magistrate [judge] . . . [was] unreasonable" and "violate[d] due process." As the Supreme Court recently explained in *Class v. United States*, "[a] valid guilty plea . . . renders irrelevant—and thereby prevents [a] defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." 138 S. Ct. 798, 805 (2018).

Moreover, Pabon fails to explain why any of these alleged failings divest the district court of subject matter jurisdiction.  "[W]e have held that an unconditional guilty plea waives non-jurisdictional defects such as the right to a speedy trial, the right to inspect grand jury minutes, and the right to challenge the composition of the grand and petit juries." *United States v. Valencia*, 556 F. App'x 916, 918 (11th Cir. 2014) (citing *United States v. Pierre*, 120 F.3d 1153, 1155–56 (11th Cir. 1997), *United States v. Tallant*, 547 F.2d 1291, 1294 n. 4, 1295 (5th Cir. 1977), and *Winters v. Cook*, 466 F.2d 1393, 1394–95 (5th Cir. 1972)).  Similarly, an appeal waiver, such as the waiver in Pabon's

plea agreement, precludes a subsequent challenge to a grand jury proceeding. *United States v. Pizarro-Campos*, 506 F. App'x 947, 950 (11th Cir. 2013) (enforcing an appeal waiver in a plea agreement to reject reviewing a claim that the trial court erred in denying a request for a transcript of the grand jury proceedings).[4]

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Pabon claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective

---

[4] Also, Pabon asserts four grounds of ineffective assistance of counsel that, because each is based on a post-plea event, are not waived by the guilty plea. These additional grounds are discussed below.

- 6 -

assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Pabon must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Pabon must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

## IV.  GROUNDS FOR RELIEF

Pabon's alleges that trial counsel rendered ineffective assistance (1) by not objecting to his sentence, which sentence he contends violates the plea agreement (Ground One); (2) by not explaining the pre-sentence investigation report and not objecting to the omission of Section 2X1.1, United States Sentencing Guideline, from

the calculation of his guidelines range (Ground 10); (3) by not moving for a three-point reduction under Section 2X1.1 (Ground Eleven); and (4) by not moving for relief based on all of the claims asserted in the motion to vacate (Ground Twelve).

**Ground One:**

Pabon alleges that trial rendered ineffective assistance by not objecting to his sentence of 121-months imprisonment when Pabon "signed a plea agreement which stated that the maximum sentence would be 7–9 years." (Doc. 1 at 13)  This claim is refuted by the plea agreement that Pabon signed, which states that "Count One is punishable by a mandatory minimum term of imprisonment of ten (10) years up to life imprisonment," plus fines and supervised release. (Doc. 38 at 2 in 22-cr-209)

**Grounds Ten and Eleven:**

Pabon alleges that trial counsel rendered ineffective assistance (1) by not explaining the pre-sentence investigation report and not objecting to the omission of Section 2X1.1, United States Sentencing Guideline, from the calculation of his guidelines range (Ground 10) and (2) by not moving for a three-point reduction under Section 2X1.1 (Ground Eleven).  Section 2X1.1 allows for a three-point reduction under certain circumstances for attempt and conspiracy crimes.  Pabon contends that "he was entitled to [Section 2X1.1] for the Attempt crime." (Doc. 1 at 16)  Pabon was neither charged nor convicted of an "attempt" crime.  Moreover, Pabon is not eligible for a three-point reduction under Section 2X1.1 for his conspiracy conviction because the reduction is inapplicable if "the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the

substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension . . . ." Pabon was apprehended in international water before the intended delivery of the cocaine.

**Ground Twelve:**

Pabon alleges that trial counsel rendered ineffective assistance by not moving for relief based on all of the claims asserted in the motion to vacate. As discussed above, each claim is either waived, forfeited, or meritless.

## V.  INAPPLICABLE ANCIENT WRITS

Pabon includes with his motion under Section 2255, which he prepared using the required form, an attachment that purports to seek relief under *audita querela* and *coram nobis*. Neither applies.

First, Pabon correctly recognizes that "[t]he writs of error *coram nobis* and *audita querela* are used to attack allegedly invalid convictions which have continuing consequence[s and] when the petition[er] has served his sentence and is no longer 'in custody' for purposes of 28 USC 2255." (Doc. 1 at 12)  *See United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (recognizing that the extraordinary writ of error *coram nobis* is available only "when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255."). Pabon's present imprisonment in the Fort Dix Federal Correctional Institution means that he is still "in custody."

Second, the ancient writ of *audita querela*, formerly available in civil cases to judgment debtors, was mercifully abolished as a civil remedy by the 1948 amendment

to the Federal Rules of Civil Procedure. Wright, Miller, and Kane, FEDERAL PRACTICE AND PROCEDURE 11, Section 2867, explains:

> Rule 60(e), added as a part of the 1948 amendments, states that 'bills of review and bills in the nature of bills of review and writs of coram nobis, coram vobis, and audita querela' are abolished. Few except legal historians will understand clearly what it is that was abolished, but those who do understand are grateful for what was done.

Apparently some issue persisted with respect to the continuing availability of *audita querela* to correct purely legal errors in a narrow class of criminal cases. *See, e.g., United States v. Morgan*, 346 U.S. 502 (1954); 7 Am. Jur. 2d, *Audita Querela*, Section 4, "–In Criminal Cases;" Means, POSTCONVICTION REMEDIES, Section 5.11 (2016). Any residual doubt about the status of *audita querela* for district courts in the Eleventh Circuit Court of Appeals vanished not later than *Gonzalez v. Sec'y, Dept. of Corr.*, 366 F.3d 1253 (11th Cir. 2004), if not much earlier.

* * * *

The motion (Doc. 1) under 28 U.S.C. § 2255 is **DENIED**. The clerk must (1) enter a judgment and close this civil case and (2) enter a copy of this order in the criminal case.

### DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Pabon is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Pabon must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Pabon is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Pabon must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on July 21, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE